UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC., <br>     Plaintiff, <br><br> v. <br><br> NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION, INC. and TORREN K. COLCORD, <br>     Defendants, <br><br> and <br><br> AMERICAN MEDICAL RESPONSE, <br>     Trustee Defendant. | CIVIL ACTION NO. 13-10854-JLT |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR STAY AND AN ORDER COMPELLING ARBITRATION**

I.      INTRODUCTION

The defendants National Emergency Medical Services Association, Inc. (hereafter

"NEMSA") and its Executive Director, Torren K. Colcord (hereafter "Colcord") (collectively

"Defendants"), hereby submit this memorandum of law in support of Defendants' Motion To

Dismiss Or, In The Alternative, Motion For Stay And An Order Compelling Arbitration.

Under the Federal Arbitration Act (the "FAA") 9 U.S.C. § 4 (2006), a party "aggrieved by

the failure" of another party to arbitrate may "petition any United States district court which, save

for such agreement [to arbitrate], would have jurisdiction under Title 28" for "an order directing

that such arbitration proceed." This section suggests that in the event there is a valid arbitration

clause among litigants, the district court lacks subject-matter jurisdiction. This would be

especially true where, as in this case, the arbitration clause states that negotiation, mediation and/or arbitration through the American Arbitration Association (hereafter "AAA") shall be the "only" means of dispute resolution.

Because there is an arbitration clause in this matter, the Court should dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure or under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

In the alternative the Court should issue a stay in this matter and enter an order compelling arbitration under 9 U.S.C. § 3.

## II.    STATEMENT OF FACTS

1.    In its Verified Complaint, Plaintiff, National Association of Government Employees, Inc. (hereafter "NAGE"), has alleged that Defendants entered into, and breached, three agreements: the Affiliation Agreement (NEMSA only), the Servicing Agreement (NEMSA only), and the Employment/Consulting Agreement (Colcord only) (collectively the "Agreements"). (Verified Complaint ¶¶ 8, 9, 18.)

2.    Exhibits A through E of the Verified Complaint are copies of the agreements with their amendments. For purposes of this motion only, Defendants do not dispute the correctness of these copies.

3.    Article VII of the Affiliation Agreement provides for the "Settlement of Disputes Between NEMSA and NAGE." It states that "the only means of settlement of disputes concerning the interpretation, application and enforcement of the terms of this Agreement shall be as follows:" (emphasis added). The Affiliation Agreement then requires, among other things, that the parties have "discussion" regarding the dispute. If the parties cannot resolve the dispute

2

through discussion, they must "mediate/arbitrate" utilizing the services and procedures of the AAA. A copy of Article VII of the Affiliation Agreement is included herewith as Exhibit "A."

4. Paragraph 8 of the Servicing Agreement provides that disputes concerning any aspect of the Servicing Agreement will be resolved "pursuant to the mediation/arbitration provisions set forth in Article VII of the parties' Affiliation Agreement." A copy of paragraph 8 of the Servicing Agreement is included herewith as Exhibit "B."

5. The Employment/Consulting Agreement does not have a dispute resolution clause. However, it explicitly references the "affiliation/servicing" agreement between NAGE and NEMSA and provides that Colcord's employment is to "assist the union in the implementation of the affiliation/servicing agreement."

6. NAGE alleges that the three agreements were executed on the same day. (Verified Complaint ¶ 18.)

7. NAGE alleges that Colcord violated the Employment/Consulting agreement by, among other things, causing NEMSA to violate the Affiliation and Servicing Agreements. (Verified Complaint ¶ 59(b-c).) NAGE further alleges that Colcord's personal conduct breached not just the Employment/Consulting Agreement but the Servicing Agreement as well. (Verified Complaint ¶ 60.)

8. Defendants have filed an arbitration demand with the American Arbitration Association in Modesto, California. A true and correct copy of the arbitration demand is attached herewith as Exhibit "C."

9.     The AAA has the power to issue injunctive and prejudgment relief including orders necessary for the preservation of assets.[1]

## III.     ARGUMENT

### a.     The Court lacks subject-matter jurisdiction due to the presence of an arbitration clause.

The Court should dismiss this matter for lack of subject-matter jurisdiction. When there is a valid arbitration clause, the court is "deprived of jurisdiction of the subject matter." Evans v. Hudson Coal Co., 165 F.2d 970, 972, (3d Cir. 1948).[2] "Rule 12(b)(1) authorizes dismissal of a complaint if the court lacks subject matter jurisdiction over the claims. This rule serves as umbrella covering for a variety of different types of challenges to subject matter jurisdiction, including the existence of diversity jurisdiction." Tang v. Div. of Sexually Transmitted Disease Control & Prevention, 2008 U.S. Dist. LEXIS 97411, 2-3, 2008 WL 5101366 (D. Mass. Dec. 1, 2008) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001)). Furthermore, "[t]he party asserting jurisdiction bears the burden of proving that federal jurisdiction is proper." Id. Accordingly, NAGE has the burden to prove that "jurisdiction is proper" in the face of the arbitration clause. This is a burden NAGE cannot carry.

Section 4 of the FAA provides that a party may petition a court for an order compelling arbitration where that court would have "jurisdiction" "save for" an applicable agreement to arbitrate. 9 U.S.C. § 4 (2006). When a court interprets a statute, it "must consider the ordinary

---

1 Rule R-34 of the AAA Rules of Commercial Arbitration provides:
    (a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.
    (b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.
    (c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

4

meaning of each word in the legislation so as to give effect to each term and the legislation as a whole." Reynolds v. Mercy Hosp., 861 F. Supp. 214, 221, (W.D.N.Y. 1994). Furthermore, courts should "disfavor interpretations of statutes that render language superfluous." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). In interpreting Section 4 of the FAA, the court should assume that Congress used the word "jurisdiction" advisedly and in its ordinary meaning and that the court lacks jurisdiction in the face of an arbitration agreement. The court should not apply an interpretation that would render the words "jurisdiction" and "save for" superfluous. Because an arbitration agreement applies in this case, this court lacks jurisdiction and should dismiss.

Also, because the parties to the agreement have agreed that the "only" method of dispute resolution is "mediation/arbitration," they have agreed that the court shall not be used for dispute resolution. By bringing the present action, NAGE is in breach of the agreement. Hence, dismissal is also proper under Rule 12(b)(6) because NAGE has failed to state a claim upon which relief may be granted. Fed. R. Civ. Pro. Rule 12(b)(6).

> b.　　In the alternative the Court should issue a stay of the court action and issue an order compelling arbitration.

If the court is disinclined to dismiss this suit, it should issue a stay and an order compelling arbitration. The FAA provides the following:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the

---

2 The Evans court held that the appropriate remedy is for the court to issue a stay of the proceedings pending arbitration. The present motion asks for dismissal or, in the alternative, a stay.

agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006).

This section gives the court the power and duty to issue a stay pending arbitration if it is satisfied that this issue is referable to arbitration. Because NAGE has chosen to litigate notwithstanding the arbitration clause in the Affiliation Agreement, an order compelling arbitration is necessary to ensure that NAGE complies.

i.      This matter is referable to arbitration.

The arbitration clause in the Affiliation Agreement is "an agreement in writing" for arbitration. The claims for relief in NAGE's complaint explicitly invoke the Affiliation Agreement and allege breaches of contract and breaches of duty in relation to the Affiliation Agreement and the other two agreements. Because the Affiliation Agreement contains an arbitration clause, this matter is referable to arbitration.

Because the Servicing Agreement explicitly adopts the dispute resolution provisions of the Affiliation Agreement, NAGE's claims arising from it are also referable to arbitration.

ii.      The Employment/Consulting Agreement is referable to arbitration notwithstanding the lack of an arbitration clause.

Though the Employment/Consulting Agreement does not have an arbitration clause, it is also referable to arbitration because the parties so intended. The U.S. Supreme Court stated that, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 625-626, (1985) (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)) (internal quotation marks omitted). Furthermore, the court stated, "[T]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the

6

scope of arbitrable issues should be resolved in favor of arbitration." *Id.* When in doubt with

respect to a particular claim, "[a]n order to arbitrate the particular grievance should not be denied

unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583

(1960) (emphasis added). Thus, the court should deny an order for the parties to arbitrate the

Employment/Consultation Agreement only if the arbitration clause cannot be interpreted to cover

NAGE's claims against Colcord.

In its Verified Complaint, NAGE treats all three agreements as one agreement. The

Employment/Consulting Agreement references the other agreements and even expressly states

that the purpose of the agreement is "the implementation of the affiliation/servicing agreement."

Here the parties refer to both agreements in the singular; as one agreement. Furthermore, in

NAGE's Complaint, it alleges that Colcord's personal actions violated the Servicing Agreement.

(Verified Complaint ¶ 60.) Colcord's personal actions could not violate the Servicing Agreement

unless Colcord were an agent to one or more parties to the Servicing Agreement.

Because all three agreements were executed on the same day, involve the same subject

matters, and reference each other to accomplish the purposes expressed therein, all three

agreements embody one overarching purpose to effectuate the affiliation of NEMSA and NAGE.

Thus, Colcord's employment with NAGE must be read in conjunction with the Affiliation and

Servicing Agreements because the Employment/Consultation Agreement is merely a way to

implement those agreements. Since the Employment/Consultation Agreement is meant to

implement the other agreements, it is also reasonable that the arbitration clause that applies to

those agreements should also apply to the Employment/Consultation Agreement.  To read the

Employment/Consulting Agreement in isolation would be to misconstrue it.

Because the three agreements are so highly related, it would be inefficient to arbitrate two

of them while litigating the third in court.  The parties would be litigating substantially the same

issues in both venues leading to redundant costs and possibly inconsistent decisions.  This result

would defeat one of the purposes of arbitration which is "to expedite and facilitate the settlement

of disputes and avoid the delay caused by litigation." Radiator Specialty Co. v. Cannon Mills,

Inc., 97 F.2d 318, 319 (4th Cir. 1938).  See also Trade Arbed, Inc. v. S/S Ellispontos, 482 F.

Supp. 991, 999 (S.D. Tex. 1980).

Therefore, the Court should also order the parties to arbitrate the Employment/

Consultation Agreement along with the other two agreements.

        iii.        Even if the Employment/Consultation Agreement is not referable to
                     arbitration, the Court must stay all proceedings pending arbitration.

Even if the Employment/Consultation Agreement is not referable to arbitration, a stay

should issue on all matters pending arbitration of the claims arising from the Affiliation and

Servicing agreements.  One court, in interpreting 9 U.S.C. § 3, held that, "so long as (1) there is

an agreement to arbitrate and (2) at least one of the issues involved in the suit is within the scope

of the arbitration agreement, a stay is to be granted as a matter of course." China Union Lines,

Ltd. v. American Marine Underwriters, Inc., 458 F. Supp. 132, 135 (S.D.N.Y. 1978).

        c.        Plaintiff's motion for approval on attachment of trustee process should also be
                  dismissed or stayed.

Plaintiff has made a motion for the attachment of certain funds in the possession of

Trustee American Medical Response.  The court should dismiss or stay this motion for the same

reason it should dismiss or stay the entire matter:  NAGE has agreed that its remedy is to

arbitrate. Furthermore, the commercial arbitration rules of the AAA provide that the arbitrator may order injunctive relief including asset protection. Commercial Arbitration Rule R-34. Accordingly, NAGE has a prejudgment remedy available in the arbitration forum that it agreed to use.

## IV. CONCLUSION

Because the court lacks jurisdiction as a result of an applicable arbitration clause, it should dismiss this matter under Rule 12(b)(1) or Rule 12(b)(6). As an alternative the court should issue a stay and an order compelling the parties to arbitrate all issues arising under the three agreements or at least stay all proceedings and compel arbitration on the issues arising under the Affiliation Agreement and Servicing Agreement.

DEFENDANTS NATIONAL EMERGENCY
MEDICAL SERVICES ASSOCIATION, INC. and
TORREN K. COLCORD
By their attorneys,

/s/ John P. Connelly
John P. Connelly, BBO #546670
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
(617) 345-9000
jconnelly@haslaw.com

Dated: May 3, 2013

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 3, 2013.

/s/ John P. Connelly
John P. Connelly

# Exhibit "A"

bring any issue of noncompliance to NEMSA's attention, and provide reasonable opportunity to correct the alleged deficiency, prior to any formal action.

NEMSA's jurisdictional protection against other labor organizations is an essential condition of this Affiliation Agreement and should NEMSA not be protected under all applicable articles, constitutions, or bylaws of any federation(s) SEIU is affiliated with or under any separate agreements negotiated by SEIU regarding jurisdiction, including but not limited to, the Joint Commitment Agreement between AFSCME and SEIU dated September 15, 2005 (as amended) and extended through December 31, 2013, NEMSA shall have the right to void this Agreement and relieve both parties of any and all obligations arising under this Agreement.

## ARTICLE VI: FINANCIAL RESPONSIBILITIES

### A. Per Capita Tax

Effective upon the first month following the effective date of this Agreement, NEMSA will remit monthly per capita payments to NAGE/SEIU Local 5000 on each of its members and fee payers in collective bargaining units for which NEMSA is the recognized representative. The amount of the per capita payment shall be equal ten percent (10%) of the dues and fees collected by NEMSA from each collective bargaining unit for which NEMSA is the recognized representative. Payment shall be due by the 15th of the month with the first payment due on or before June 15, 2012. There shall be no initiation fee required by NAGE/SEIU Local 5000 from or on behalf of NEMSA members. NEMSA shall not be entitled to per capita payments as provided by Article X, Section 6 of the NAGE/SEIU Local 5000 Constitution and Bylaws.

## ARTICLE VII: SETTLEMENT OF DISPUTES BETWEEN NEMSA AND NAGE/SEIU LOCAL 5000

Notwithstanding any provision of the NAGE/SEIU Local 5000 Constitution and Bylaws, the only means of settlement of disputes concerning the interpretation, application and enforcement of the terms of this Agreement shall be as follows:

### A. Good Faith Discussions

The parties shall meet and engage in good faith discussions in which each party shall attempt to share all information it has concerning the issue.

6

**B.    Mediation/Arbitration**

In the event that the dispute is not settled by good-faith discussions, either party may request mediation/arbitration. Using the services and procedures of the American Arbitration Association, or as otherwise agreed, a mediator/arbitrator shall be chosen. This person shall then conduct hearings in attempt to mediate the dispute, but shall, when convinced the parties will not reach agreement voluntarily, be authorized to make final determinations which shall be binding on the parties, except as provided herein.

In the event of a finding or ruling that NEMSA or NAGE/SEIU Local 5000 is not in compliance with an arbitrator's decision, the arbitrator may order such remedy as the arbitrator deems appropriate until the arbitrator finds NEMSA or NAGE/SEIU Local 5000 in complete compliance. Each party shall responsible for compensating its own representatives and witnesses. The costs of any transcripts or arbitrators' fee shall be borne equally by the parties.

**ARTICLE VIII:  APPLICABLE LAW**

**A.    Interpretation**

All matters pertaining to the validity, application, interpretation and effect of this Agreement shall be interpreted in accordance with the principles of law arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185.

**B.    Compliance with Law**

Both parties are committed to strict adherence to labor, anti-discrimination, tax, campaign finance, and all other applicable state and federal laws. NEMSA and NAGE/SEIU Local 5000 are hereby mutually committed to carry out all the activities discussed in this Agreement so as to comply with all applicable laws. If either party believes the other is carrying out these activities in a fashion prohibited by law, then that party shall proceed under the terms of Article VIII of this Agreement, and if the arbitrator finds such violation it shall be deemed a violation of this Agreement.

**C.    No Third Party Rights**

This Agreement is not intended to create or establish rights of any parties other than NEMSA and NAGE/SEIU Local 5000, and any clause relating to the enforcement or

7

# Exhibit "B"



Agreement directly, through staff and employees of NEMSA and NAGE and/or through contracted third party providers. Nothing in this Agreement shall alter or affect NEMSA's status or authority as the recognized or certified bargaining representative for the units and employees it represents in accordance with applicable federal, state or local law.

4. To ensure that the bargaining unit members receive proper legal services after the transition period, NAGE shall retain in an amount not to exceed $24,000 per month, NEMSA's current Law Firm, The Talbot Law Group, to provide legal services as described in the NEMSA retainer, including collective bargaining, the initiation and defense of unfair labor practices and the representation of bargaining unit members, for a minimum period beginning September 1, 2012 through December 31, 2012

5. NAGE shall sublet the NEMSA Suites at 4701 Sisk Road, Modesto, CA 95356 from NEMSA to utilize as office space for the period beginning September 1, 2012 and ending on December 31, 2013 at the rate of $5,000 per month.

6. NEMSA and NAGE/SEIU Local 5000 shall fully cooperate with each other to ensure that each party has all materials and information necessary to carry out the performance of its duties under this Agreement, including the names, addresses, phone numbers and email addresses of members, stewards, officers and member activists. Each party agrees to introduce staff and service providers to the other party's members and invite staff and officers to attend relevant shop, chapter and membership meetings. NEMSA shall regularly report to NAGE/SEIU Local 5000 about its performance of services under this Agreement. .

7. Commencing September 1, 2012 NEMSA shall pay a fee equal to eighty five percent (85%) of the total dues and fees collected by NEMSA from each collective bargaining unit for which NEMSA is the recognized representative for the services provided by NAGE/SEIU Local 5000 under this Agreement. Payment shall be due by the 15th of the month with the first payment due by October 15, 2012. Commencing March 1, 2013, the fee paid by NEMSA for the services provided by NAGE/SEIU Local 5000 under this Agreement shall increase to ninety percent (90%) of the total dues and fees collected by NEMSA from each collective bargaining unit for which NEMSA is the recognized representative.

8. Disputes between the parties concerning any aspect of this Agreement and is performance shall be resolved through good faith discussions after full disclosure of the facts supporting the parties' respective claims. If a dispute remains unresolved following such good faith discussions, the parties agree that the dispute shall be resolved pursuant to the mediation/arbitration provisions set forth in Article VII of the parties' Affiliation Agreement.

2

# Exhibit "C"

 American Arbitration Association
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
(ENTER THE NAME OF THE APPLICABLE RULES)
### Demand for Arbitration

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☒
*There is no additional administrative fee for this service.*

| Name of Respondent
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC. | | | Name of Representative (if known)
RICHARD L. BARRY, JR. | | |
|---|---|---|---|---|---|
| Address:
159 BURGIN PARKWAY | | | Name of Firm (if applicable): | | |
| | | | Representative's Address
159 BURGIN PARKWAY | | |
| City
QUINCY | State
MA | Zip Code
02169 | City
QUINCY | State
MA | Zip Code
02169 |
| Phone No.
617-376-0220 | Fax No.
617-376-0285 | | Phone No.
617-376-0285 | Fax No. | |
| Email Address: | | | Email Address:
rbarry@nage.org | | |

The named claimant, a party to an arbitration agreement dated <u>April 30, 2012</u>, which provides for arbitration under the <u>Commercial</u> Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE This is a dispute between two labor unions, National Emergency Medical Services Association, Inc. (NEMSA) and the National Association of Government Employees, Inc. (NAGE) arising out of written agreements for an affiliation between them. Torren Colcord is the executive director of NEMSA and has an interest in the dispute arising out of an employment agreement between Mr. Colcord and NAGE integral to the affiliation of the two unions. One of NEMSA's claims is for injunctive relief, restraining Respondent from raiding NEMSA's members.

| Dollar Amount of Claim $
As much as $5 million. | Other Relief Sought: ☒ Attorneys Fees ☒ Interest
☒ Arbitration Costs ☐ Punitive/ Exemplary ☒ Other Injunction |
|---|---|

Amount Enclosed $ <u>1,000.00</u>  In accordance with Fee Schedule: ☒Flexible Fee Schedule  ☐Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
ARBITRATORS WHO ARE ON BOTH PANEL OF LABOR ARBITRATORS AND PANEL OF COMMERCIAL ARBITRATORS, OR ARBITRATORS ON COMMERCIAL PANEL WHO HAVE TRADITIONAL LABOR LAW EXPERIENCE.

Hearing locale <u>MODESTO, CA</u>  (check one) ☒ Requested by Claimant  ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:
_____ hours or __3.00__ days | Type of Business: Claimant LABOR UNION
Respondent LABOR UNION |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☒No
Does this dispute arise out of an employment relationship? ☒Yes ☐No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☒ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative) Date:
5/1/13 | Name of Representative
GREGORY M. SIMONSEN | | |
|---|---|---|---|
| Name of Claimant NATIONAL EMERGENCY MEDICAL
SERVICES ASSOCIATION, INC. AND TORREN COLCORD | Name of Firm (if applicable)
FETZER SIMONSEN BOOTH & JENKINS, P.C. | | |
| Address (to be used in connection with this case):
4701 SISK ROAD, SUITE 102 | Representative's Address:
50 W. BROADWAY, SUITE 1200 | | |
| City
MODESTO | State
CA | Zip Code
95356 | City
SALT LAKE CITY | State
UT | Zip Code
84101 |
| Phone No.
866-544-7398 | Fax No.
209-572-4721 | | Phone No.
801-328-0266 | Fax No.
801-328-0269 | |
| Email Address:
tkcolcord@nesausa.org | | | Email Address:
greg@mountainwestlaw.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185

**This concludes your filing.**

**Thank you for submitting your claim to the AAA.**

**Your claim confirmation number is: 002-YRB-Z4M**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Commercial Dispute Resolution Procedures
Arbitration
$2,500.00

---

**Additional Claim Information**

Flexible

$5,000,000.00

This is a dispute between two labor unions, National Emergency Medical Services Association, Inc. (NEMSA) and the National Association of Government Employees, Inc. (NAGE) arising out of written agreements for an affiliation between them. Torren Colcord is the executive director of NEMSA and has an interest in the dispute arising out of an employment agreement between Mr. Colcord and NAGE integral to the affiliation of the two unions. One of NEMSA's claims is for injunctive relief, restraining Respondent from raiding NEMSA's members.

see uploaded document

Modesto , CA

04/30/2012

1

---

| **Claimant** | **Representatives** |
|---|---|

**Torren Colcord-NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION, INC.**

Other

| | |
|---|---|
| Torren Colcord | Gregory M. Simonsen |
| NATIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION, INC. | Fetzer Simonsen Booth & Jenkins |
| | 50 W. Broadway, Ste 1200 |
| | Salt Lake City, UT 84101 |
| 4701 Sisk Road, Suite 102 | |
| Modesto, CA 95356 | 801-328-0266 |
| 866-544-7398 | 801-328-0269 |
| 209-572-4721 | greg@mountainwestlaw.com |
| tkcolcord@nemsausa.org | |
| Both | Clark B. Fetzer |
| | Fetzer Simonsen Booth & Jenkins |
| | 50 W. Broadway, Ste 1200 |
| | Salt Lake City, UT 84101 |
| | 801-328-0266 |
| | 801-328-0269 |
| | clark@mountainwestlaw.com |

---

| **Respondent** | **Representatives** |
|---|---|

**NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.**

Other

Richard L. Barry, Jr.

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES,
INC.
159 Burgin Parkway
Quincy, MA 02169
617-376-0220
617-376-0285

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES,
INC.
159 Burgin Parkway
Quincy, MA 02169
617-376-0285

Company

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 05/02/2013 16:17 EDT