UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF | ) | |
| GOVERNMENT EMPLOYEES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL EMERGENCY MEDICAL | ) | CIVIL ACTION |
| SERVICES ASSOCIATION, INC. and | ) | NO.  13-10854-JLT |
| TORREN K. COLCORD, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| AMERICAN MEDICAL RESPONSE, | ) | |
| | ) | |
| Trustee. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S
MOTION FOR APPROVAL OF ATTACHMENT ON TRUSTEE PROCESS**

July 10, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, National Association of Government Employees, Inc. ("NAGE"), has brought an action against the defendant, National Emergency Medical Services Association, Inc. ("NEMSA"), alleging that NEMSA breached Affiliation and Servicing Agreements between the parties by failing to pay NAGE amounts due under the agreements.  This matter is presently before the court on NAGE's motion for approval of attachment on trustee process, pursuant to which NAGE is seeking an attachment on

trustee process in the amount of $281,380.68 on the goods, effects, or credits of NEMSA which are now or later come to be in the possession of American Medical Response ("AMR") in the form of union dues payable by its members to NEMSA.[1]  (Docket No. 2). NEMSA has denied any liability to NAGE, and further moved to either dismiss or stay this action so that the issues in dispute can be presented to an arbitrator in accordance with an arbitration provision in the agreements.

The motion to dismiss/stay is presently under advisement by this court.  However, the parties are in agreement that this court has jurisdiction to rule on the motion for trustee process attachment.  After careful consideration of the arguments presented, and for the reasons detailed herein, the motion for trustee process attachment is DENIED. Whether or not payments are due to NAGE from NEMSA depends on the interpretation of the contract, which will have to be resolved by an arbitrator.  Therefore, NAGE has failed to establish a likelihood of success on the merits.  In addition, NAGE has failed to establish that it would be harmed by the denial of the attachment, since AMR's payment obligations to NEMSA are continuing, and exceed those amounts NAGE claims are due under the agreements.

---

[1] Since the motion for trustee process attachment relates only to amounts allegedly due from NEMSA, this court will not address NAGE's claims against Torren Colcord, NEMSA's Executive Director.

## II.  STATEMENT OF FACTS

The following facts, which are limited to those relevant to the motion for trustee process attachment, are not in dispute unless otherwise indicated.

NAGE is a national labor union that primarily represents federal, state, and municipal employees, emergency medical technicians and paramedics.  It represents approximately 43,000 members nationwide.  NEMSA is a smaller labor union which, according to its calculations, represents approximately 6,500 employees of private emergency medical service providers nationwide.  On or about April 30, 2012, NAGE and NEMSA entered into two agreements, an Affiliation Agreement and a Servicing Agreement.  The Affiliation Agreement went into effect on April 30, 2012, and the Servicing Agreement went into effect on November 1, 2012.  As described by NEMSA, "[i]n these agreements NAGE promised to provide NEMSA members 'high quality' representation in the negotiation of collective bargaining agreements, administration and enforcement of collective bargaining agreements, processing of grievances and arbitrations, initiation and defense of unfair labor practice charges, and the representation of bargaining unit employees."  (Colcord Aff. (Docket No. 18-1) ¶ 3).  NAGE describes the agreements in comparable terms.  (See Farley Aff. (Docket No. 3-1) ¶ 6 ("Under the terms of the two agreements, NAGE promised to provide staffing and resources, as well as the benefits and protection of affiliation with a much larger organization, to NEMSA.")).  The parties disagree as to whether NAGE fulfilled its obligations under these agreements.

Under the Affiliation Agreement, NEMSA was to pay NAGE "monthly per capita payments . . . on each of its members and fee payers in collective bargaining units for which NEMSA is the recognized representative" in an amount equal to "ten percent (10%) of the dues and fees collected by NEMSA from each collective bargaining unit for which NEMSA is the recognized representative." (Affiliation Agreement at Art. VI:A). Under the Servicing Agreement, NEMSA was to pay NAGE "eighty five percent (85%) of the total dues and fees collected by NEMSA from each collective bargaining unit for which NEMSA is the recognized representative[.]" (Servicing Agreement ¶ 7). NAGE contends that NEMSA owes it $281,380.68 under these agreements. NEMSA, however, contends that there are no amounts due. As NEMSA argues:

> NEMSA collected dues and fair share fees from unit members and paid the correct percentage on all those dues and fees. However, in accordance with NEMSA's bylaws, as well as a membership vote, additional and separate sums for a strike fund, legal defense fund, and negotiation fund are deducted and accounted for in a separate process. The agreements state that the per capita tax to be assessed is on the "dues and fees" and did not include the separate strike fund, legal defense fund, and bargaining fund.
>
> At no time did NAGE notify NEMSA that the manner in which NEMSA calculated and paid the per capita taxes was improper or inconsistent with the affiliation or servicing agreements. In fact, it was not until after NAGE filed its Verified Complaint ... that NEMSA became aware of NAGE's objection to the way in which NEMSA calculated the dues and fees.
>
> The agreements only require that NEMSA pay a percentage of dues and fees collected by NEMSA. The accounting utilized by NAGE ... seeks payment on dues and fees that were never received by NEMSA. Because these funds were not received by NEMSA, they are not owed to NAGE.

(Colcord Aff. ¶¶ 12-14).  Neither party has submitted any evidence as to the parties' intent with respect to the meaning of the agreement.

By letter dated April 5, 2013, NAGE purported to terminate the agreements effective April 8, 2013, and it commenced litigation on April 11, 2013.  NEMSA denies that NAGE had the right to unilaterally terminate the agreements.  Moreover, NEMSA contends that any dispute has to be resolved through mediation or arbitration.  Thus, the Servicing Agreement provides in relevant part:

> Disputes between the parties concerning any aspect of this Agreement and is [sic] performance shall be resolved through good faith discussions after full disclosure of the facts supporting the parties' respective claims.  If a dispute remains unresolved following such good faith discussions, the parties agree that the dispute shall be resolved pursuant to the mediation/arbitration provisions set forth in Article VII of the parties' Affiliation Agreement.

(Servicing Agreement ¶ 8).  The Affiliation Agreement provides in relevant part as follows:

> ARTICLE VII: SETTLEMENT OF DISPUTES BETWEEN NEMSA AND NAGE/SEIU LOCAL 5000
>
> Notwithstanding any provision of the NAGE/SEIU Local 5000 Constitution and Bylaws, the only means of settlement of disputes concerning the interpretation, application and enforcement of the terms of this Agreement shall be as follows:
>
> A.     Good Faith Discussions
>
> The parties shall meet and engage in good faith discussions in which each party shall attempt to share all information it has concerning the issue.
>
> B.     Mediation/Arbitration

> In the event that the dispute is not settled by good-faith discussions, either party may request mediation/arbitration. Using the services and procedures of the American Arbitration Association, or as otherwise agreed, a mediator/arbitrator shall be chosen. This person shall then conduct hearings in attempt to mediate the dispute, but shall, when convinced the parties will not reach agreement voluntarily, be authorized to make final determinations which shall be binding on the parties, except as provided herein.

(Affiliation Agreement Art. VII).

## Amounts Sought to be Attached

NEMSA is the certified exclusive bargaining representative of AMR, a private provider of emergency medical transportation services. AMR deducts the dues it owes NEMSA from its employees' paychecks, and then remits the deducted dues to NEMSA each month. The dues paid to NEMSA are estimated at approximately $110,000.00 each month. (Herring Aff. (Docket No. 3-5) ¶ 19). The AMR payments to NEMSA have been attached pursuant to litigation pending in California. However, the parties agree that the California attachment will be satisfied soon, if it has not been satisfied already.

## III. ANALYSIS

The parties agree as to the standard to be applied in determining whether a trustee process attachment is warranted in the instant case. As the court explained in Metro. Prop. & Cas. Ins. Co. v. Boston Reg'l Physical Therapy, Inc., 550 F. Supp. 2d 199 (D. Mass. 2008):

> Attachment is available "under the law of the state where the court is located." Fed. R. Civ. P. 64. In Massachusetts the seizure of property is governed by Mass. Gen. Laws ch. 223, §§ 42-83 (attachment) and ch. 246 (trustee process), which are implemented

> through Mass. R. Civ. P. 4.1 and 4.2.  Attachment may be entered only:
>
>> upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover a judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment [or trustee process] over and above any liability insurance shown by the defendant to be available to satisfy the judgment.
>
> The central issue to be considered by the court is whether the plaintiff is "likely to prevail on the merits and obtain damages in the necessary amount." *Aetna Cas. and Sur. Co. v. Rodco Autobody,* 138 F.R.D. 328, 332 (D. Mass. 1991) (citations omitted).  The Massachusetts courts have not determined the exact evidentiary standard (e.g., clear and convincing or preponderance of the evidence) needed to determine "likelihood."  *Sheehan v. Netversant-New England, Inc.,* 345 F. Supp. 2d 130, 132 (D. Mass. 2004).

Metro. Prop. & Cas. Ins. Co., 550 F. Supp. 2d at 201.  "In this case, however, the amount of Plaintiff's potential recovery is too uncertain to warrant attachment under any reasonable standard."  Sheehan, 345 F. Supp. 2d at 132.  Thus, NEMSA has submitted evidence which would establish that, following the procedures established by NEMSA's bylaws and a membership vote, NEMSA does not owe NAGE any money.  NEMSA's contract interpretation is not unreasonable on its face.  At best, the record before this court "reveals equally balanced contentions."  Met. Prop. & Cas. Ins. Co., 550 F. Supp. 2d at 202.  Consequently, no attachment should be issued.  See id.

   Finally, NAGE notes that while it is not necessary for it to prove that the defendant may not be able to satisfy an eventual judgment in order to obtain a trustee process attachment, nevertheless, NAGE contends that it has "substantial reason to fear" that NEMSA will not have sufficient funds as its accounts are depleted.  (See NAGE's

Mem. (Docket No. 3) at 7). However, this argument is not persuasive. According to NAGE, NEMSA is to collect $110,000 per month from AMR, and the attachment of the funds in California is soon to be satisfied. NAGE has not explained why the future monthly payments will be insufficient to pay a potential judgment in an amount less than three months of AMR's payments.

## IV.  CONCLUSION

For all the reasons detailed herein, NAGE's Motion for Trustee Process Attachment (Docket No. 2) is DENIED.

                                                         / s / Judith Gail Dein
                                                      Judith Gail Dein
                                                      U.S. Magistrate Judge