UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF | ) | |
| GOVERNMENT EMPLOYEES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL EMERGENCY MEDICAL | ) | CIVIL ACTION |
| SERVICES ASSOCIATION, INC. and | ) | NO.  13-10854-JLT |
| TORREN K. COLCORD, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION
AND PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIMS**

July 16, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is a dispute between two labor unions, the plaintiff, National Association of

Government Employees, Inc. ("NAGE"), and the defendant, National Emergency

Medical Services Association, Inc. ("NEMSA"), and its Executive Director Terrence

Colcord ("Colcord").  On April 30, 2012, NAGE and NEMSA entered into Affiliation

and Servicing Agreements pursuant to which, inter alia, NEMSA was to become an

affiliate of NAGE and NAGE agreed not to seek to replace NEMSA as the collective

bargaining representative of various bargaining units ("anti-raiding provisions").  On the

same day, NAGE entered into an employment agreement with Colcord pursuant to which

Colcord was to be paid to obtain members for the affiliated entity.  The Affiliation and Servicing Agreements have arbitration clauses requiring that all disputes be resolved through mediation and/or arbitration.

NAGE claims that NEMSA breached a material term of its Agreements by failing to make all the payments due under the Agreements, which NEMSA denies.[1]  NAGE claims further that this material breach relieved it of all obligations under the Agreements, including its agreement to seek arbitration.  Therefore, on April 5, 2013, NAGE unilaterally terminated the Agreements and promptly moved to decertify NEMSA as the representative of various bargaining units.  NAGE commenced the instant action on April 11, 2013, seeking damages for the defendants' alleged breach of contract and a declaration that it had the right to terminate the Agreements.  NAGE also filed a motion for a trustee process attachment seeking to attach dues paid to NEMSA by American Medical Response.  After hearing, this court denied the motion for trustee process attachment. (Docket No. 44).

NEMSA and Colcord responded to NAGE's Complaint with a "Motion to Dismiss or, in the Alternative, Motion for Stay and Order Compelling Arbitration."  (Docket No. 13).  The defendants subsequently withdrew their request that the litigation be dismissed. The request for a stay is under advisement.

---

[1]  This dispute is based on the parties' differing interpretations as to the types of dues and fees which should be considered in calculating the amounts NEMSA is to pay NAGE under the Agreements.

On June 14, 2013, NEMSA and Colcord filed a motion for a preliminary injunction "to prevent NAGE from raiding NEMSA's union members contrary to an Affiliation Agreement between NEMSA and NAGE, and contrary to an employment agreement between Colcord and NAGE, and to preserve the disputes for arbitration as the parties agreed." (Docket No. 27).  The motion is supported by a memorandum (Docket No. 28) and "Verified Counterclaims for Preliminary Injunction to Preserve Jurisdiction of Labor Arbitration by Defendants/Plaintiffs-in-Counterclaim." (Docket No. 26).  NAGE has moved to strike the counterclaims (Docket No. 40) and has also opposed the request for a preliminary injunction.  (See Docket No. 43).

For the reasons detailed herein, this court recommends to the District Judge to whom this matter is assigned that NAGE's motion to strike the counterclaims be allowed as they are not filed as part of an answer, but that the court accept the verified counterclaims as a filing in support of the motion for preliminary injunction and address the merits of the defendants' request for a preliminary injunction.  This court further recommends that Colcord's motion for a preliminary injunction be denied as he has not suffered irreparable harm by the termination of his employment agreement.  While recognizing that the court's authority to issue an injunction is very restricted in labor disputes, this court recommends that NEMSA's motion for a preliminary injunction be allowed, but only to the extent necessary to enforce the parties' agreement to arbitrate their disputes under the Affiliation Agreement and the Servicing Agreement.  According-

ly, this court recommends to the District Judge to whom this case is assigned that the

court enter the following order:

> Pending the outcome of any requests for preliminary relief submitted
> in arbitration proceedings between the National Association of
> Government Employees, Inc. ("NAGE") and the National
> Emergency Medical Services Association, Inc. ("NEMSA"), it is
> hereby ORDERED that (1) NAGE shall be restrained and enjoined
> from participating in any election(s) in which it would be seeking to
> replace NEMSA or otherwise challenge NEMSA's status as the
> representative for any existing employees or bargaining units; (2)
> NAGE shall withdraw all pending petitions to decertify NEMSA as
> the representative of any existing bargaining units; and (3) NAGE
> shall be restrained and enjoined from pursuing further efforts to
> decertify NEMSA as the representative of any existing bargaining
> units.

## II.  STATEMENT OF FACTS

On April 30, 2012, NAGE and NEMSA entered into Affiliation and Servicing

Agreements, which, by their terms, were to "remain in effect until and unless [they are]

amended or terminated by mutual agreement of the parties hereto."  (Affiliation Agree-

ment (Docket No. 3-2) Art. IX:C; see also Servicing Agreement (Docket No. 3-3) at 3 ¶ 8

(this Agreement "shall remain in effect unless and until amended or terminated by mutual

consent of the parties")).  Pursuant to the Affiliation Agreement, members of NEMSA

were to become members of NAGE "with all ensuing rights and privileges," and NAGE

was to make "available to NEMSA all of the services provided to other affiliates and

locals of NAGE/SEIU Local 5000."  (See Complaint (Docket No. 1) ¶ 10).  In return, the

Affiliation Agreement requires NEMSA to pay NAGE 10% of the dues and fees collected

from each bargaining unit it represents.  (Id. ¶ 11).  The Servicing Agreement provides

that NAGE will provide representational services to NEMSA, including, without limita-tion, negotiating, administering and enforcing collective bargaining agreements. (See id. ¶ 13). In return, NEMSA was to pay NAGE 85% of the total dues and fees collected by NEMSA from each bargaining unit it represented. (Id. ¶ 14). Finally, on April 30, 2012, NAGE entered into a contract with Colcord for "Employment/Consulting Services" (Docket No. 1-4) pursuant to which Colcord became an employee of NAGE responsible for recruiting new employees to choose NAGE as their bargaining representative. (Compl. ¶ 19). In addition to his salary, Concord was to be paid $50 for each new member he obtained. (See Employment Agreement ¶ 5).

Of particular relevance to the instant dispute, pursuant to the NAGE and NEMSA Agreements, NAGE agreed to support NEMSA and not to challenge NEMSA's status as the bargaining agent for the employees and bargaining units NEMSA represented. NAGE further agreed to resolve all "[d]isputes between the parties concerning any aspect of this Agreement and its performance" through negotiation and, if that failed, mediation or arbitration. (Servicing Agreement at 2 ¶ 8). NAGE went so far as to agree that these would be "the only means of settlement of disputes concerning the interpretation, application and enforcement of the terms of [these Agreements]." (Affiliation Agreement Art. VII).

Disputes arose between the parties: NAGE claims that NEMSA was not paying the amounts due under the Agreements and NEMSA contends that NAGE was not providing the agreed-upon services. On April 5, 2013, NAGE sent NEMSA a letter, which was

received on April 8, 2013, purporting to unilaterally terminate its Agreements, effective

April 8, 2013, due to NEMSA's alleged failure to pay the full amounts due under the

Agreements.  As NAGE wrote in relevant part:

> NEMSA's failure to pay NAGE the amounts due under the Affilia-
> tion and Servicing Agreements constitute a material breach of those
> agreements.  In light of NEMSA's material breach of its agreements
> with NAGE, NAGE has determined that it is in its best interests to
> terminate its relationship with NEMSA.  Accordingly, this letter
> constitutes notice that the Affiliation Agreement and the Servicing
> Agreement are terminated, effective Monday, April 8.

(Verified Countercl. Ex. E (Docket No. 26-5)).  On the same day, NAGE purported also

to terminate Colcord's Employment/Consulting Agreement.  (Compl. at 2 ¶ 6).

   After its unilateral decision to terminate the Agreements, "NAGE and NEMSA

resumed their roles as competitors in the arena for the allegiance of union members."

(NAGE Mem. (Docket No. 43) at 2).  Thus, on April 9, 2013, NAGE promptly moved to

decertify NEMSA as the representative of various workers.  (See 2d Colcord Aff. (Docket

No. 38) at ¶¶ 12-13).  As NAGE has explained,

> One feature of federal labor law is that petitions by unions to
> represent groups of employees covered by a collective bargaining
> agreement that is about to expire can only be filed during an "open
> period," which is typically the 30-day period between 90 and 60
> days prior to the expiration of the collective bargaining agreement
> and again after the contract expires.  In the spring of 2013, at the
> request of employees in various units represented by NEMSA,
> NAGE filed petitions with the National Labor Relations Board
> ("NLRB") to hold elections in four places where NEMSA repre-
> sented employees under a collective bargaining agreement that was
> due to expire and an "open period" was in effect: American Medical
> Response ("AMR") of New Haven, Connecticut; Paramedics Plus of
> Alameda County, California; First Responder EMS of Sacramento,

> California; and AMR of Riverside, California.  7/8/13 Farley Aff.
> ¶ 11.  Each of these petitions was accompanied by signed authori-
> zation cards showing that more than 30 percent of the employees in
> each bargaining unit desired to be represented by NAGE.  Id. ¶ 11.
> In two of these places, other unions – the American Federation of
> State, County and Municipal Employees ("AFSCME"), and the
> United Steelworkers of America ("USW")–have also intervened to
> be on the ballot for the election of the new exclusive representative.
> Id. ¶ 15.

(NAGE Mem. at 5-6 (internal citations omitted)).[2]  Since the petitions were accompanied

by cards of at least 30% of the union membership, NEMSA argues, and NAGE does not

deny, that "NAGE must have been soliciting NEMSA's membership well in advance of

the purported termination."  (See 2d Colcord Aff. ¶ 12).  The next two collective bargain-

ing agreements under which NEMSA is the exclusive bargaining agent are set to expire

on December 31, 2013.  (7/8/13 Farley Aff. (Docket No. 43-1) ¶ 10).

While arguing to this court that, at a minimum, "the question of whether the

arbitration provisions in the agreements between NAGE and NEMSA remain enforceable

is a matter for an arbitrator in the first instance" (Docket No. 19 at 3), nevertheless on

April 11, 2013, NAGE commenced the instant lawsuit seeking, inter alia, damages for

NEMSA's alleged breach of contract and a declaration that the Agreements have been

terminated.  Simply put, NAGE has unilaterally determined that NEMSA breached the

Agreements, ignored the dispute resolution mechanism it agreed to, and then acted in

---

[2]  NAGE contends without detail that its next opportunity to compete for these unions
would not take place for "years."  (NAGE Mem. at 22).

complete disregard of its contractual obligations, totally eviscerating the benefits NEMSA had contracted for.

NEMSA filed a demand for arbitration in Modesto, California on May 1, 2013 with the American Arbitration Association ("AAA").  Modesto is where NEMSA's principal offices are located.  NAGE has filed an "Answering Statement" denying wrongdoing and asserting that "[t]here are several threshold issues that must be addressed before the resolution of any dispute on its merits in this arbitration[,]" including its contention that the appropriate venue is near Boston, Massachusetts where NAGE is headquartered, that the proceedings should be stayed until this federal litigation is resolved, that Colcord should not be a party to the arbitration, and that the AAA lacks jurisdiction over the disputes between NAGE and NEMSA because of NEMSA's alleged material breach of the Agreements.  (Verified Countercl. Ex. K (Docket No. 26-11) at 2-5).  To date, no arbitrator has been selected.  Accordingly, even if NEMSA ultimately prevails in the arbitration proceedings, it will not be able to obtain relief from the arbitrator in time to derail NAGE's efforts to have it decertified or to challenge it in the four upcoming elections.

NEMSA's attempts to halt NAGE's efforts to replace NEMSA in the pending union elections through the National Labor Relations Board ("NLRB") have proved unsuccessful due to the limited role of the NLRB in private contract disputes.  Thus, by letter dated May 10, 2013, the NLRB denied NEMSA's request to dismiss or suspend NAGE's decertification efforts in connection with Paramedics Plus/Patients Plus.  (See

7/8/13 Farley Aff. Ex. A).  In response to NEMSA's argument that NAGE's petition should be dismissed due to the Affiliation Agreement, the NLRB wrote that the "[t]he Board does not enforce private agreements between parties such as the affiliation and servicing agreements in this case."  (Id.).  Similarly, in connection with the AMR election, the NLRB notified NEMSA by letter dated June 21, 2013 that the pending election could not be suspended since "the parties are in dispute as to whether the no-raid agreement remains in effect and whether NEMSA's alleged material breach, renders that clause void."  (Id. Ex. B).  It further reasoned that the pendency of the "legal issues could conceivably lead to a significant delay to the question concerning representation[,]" and the two additional unions who have intervened in the election would not be able to participate in the arbitration between NAGE and NEMSA.  (Id.).  For the same reasons, the NLRB declined by letter dated June 17, 2013 to delay the election of First Responder EMS, Inc. of Sacramento (id. Ex. C), and declined, by order dated June 19, 2013, to delay elections in connection with AMR of New Haven.  (Id. Ex. D).  Thus, the NLRB has not taken the position that the Affiliation Agreement is unenforceable, but has simply determined that it is not the entity with authority to address its validity.

On June 14, 2013, NEMSA turned to the court, and moved for a preliminary injunction seeking to maintain the status quo pending the arbitration.  (Docket No. 27).  It has done so in connection with a filing entitled "Verified Counterclaims for Preliminary Injunction to Preserve Jurisdiction of Labor Arbitration by Defendants/Plaintiffs-In-

Counterclaim." (Docket No. 26). NAGE opposes the request for preliminary relief on

both procedural and substantive grounds.

## III.  ANALYSIS

### A.    Validity of Counterclaims

As an initial matter, NAGE challenges this court's authority to entertain NEMSA's

request for a preliminary injunction because it was brought as part of a "counterclaim"

despite the fact that NEMSA has filed only a motion to dismiss or, in the alternative, to

stay this litigation pending arbitration, but has not filed an answer.[3] NAGE is correct

that, pursuant to Fed. R. Civ. P. 12(1)(B) and 13, counterclaims can only be asserted in a

"pleading." See generally Bernstein v. IDT Corp., 582 F. Supp. 1079, 1089 (D. Del.

1984) (where party has not filed an answer, it cannot file counterclaims). "Pleadings," as

defined by Fed. R. Civ. P. 7(a), include only complaints, answers and a reply to an

answer. The filing of a motion to dismiss does not allow a defendant to file counter-

claims as a stand-alone filing. See N. Valley Commc'ns, LLC v. Qwest Commc'ns Co.,

LLC, No. Civ. 11-4052-KES, 2012 WL 523685, at *2 (D.S.D. Feb. 16, 2012 )

(defendant's motion to file counterclaims denied where defendant had only filed a motion

to dismiss, and not a "pleading"). However, that does not end the inquiry in the instant

---

[3]  This court does note, however, that since NEMSA has withdrawn its motion to dismiss, leaving only its motion to stay, it would be appropriate for an answer to be filed as the stay has not been granted and that part of the motion is still under advisement.

case since the issues raised by NEMSA's motion for a preliminary injunction are factually related to the issues raised in NAGE's Complaint.

Nothing in the Federal Rules prohibits a defendant from filing a motion for a preliminary injunction.  See generally Fed. R. Civ. P. 65.  The preliminary injunction being sought in the instant case is linked to the claims made in the Verified Complaint. Thus, in its Verified Complaint, NAGE alleges that "[t]he Affiliation Agreement between NAGE and NEMSA is an enforceable contract" and that "[t]he Servicing Agreement between NAGE and NEMSA is an enforceable contract."  (Compl. (Docket No. 1) ¶¶ 43, 50).  Under such circumstances, it is appropriate for NEMSA to seek a preliminary injunction to enforce the terms of these Agreements and maintain the status quo pending arbitration — the contractually agreed-upon forum for dispute resolution.

The cases relied on by NAGE do not compel a different result.  In Wattleton v. Doe, No. 10-40175-PBS, 2010 WL 3860610 (D. Mass. Sept. 29, 2010) (unpub. op.), an insanity acquittee in custody at FMC-Devens filed a "motion for injunctive relief" to commence an action without filing a complaint setting out the elements of his claim.  Id. at *1.  Among the various grounds given by the court for denying the motion for injunctive relief was the fact that the plaintiff had "failed to file a separate 'Complaint' necessary to commence a civil action" and the motion for injunctive relief could not be construed as a complaint since it provided "no underlying facts or circumstances support-ing his claim for relief[.]"  Id. at *2.  Here, in contrast, NEMSA's request for injunctive

relief is based on the same Agreements that form the basis of NAGE's complaint, and the motion is supported by detailed, verified allegations.

Horne v. Time Warner Operations, Inc., 119 F. Supp. 2d 624 (S.D. Miss. 1999), is similarly inapplicable. There, the court dismissed the substantive claims in plaintiff's complaint for failure to state a claim. The court then dismissed plaintiff's claim for declaratory and injunctive relief "because after dismissal of the substantive claims there is no underlying legal action upon which . . . Plaintiff may receive declaratory or injunctive relief." Id. at 630. The court ruled that since "an injunction is a remedy," it "requires a viable underlying legal claim." Id. In the instant case, NEMSA's motion for a preliminary injunction is linked to NAGE's claims of breach of contract and its request for declaratory relief concerning the continued viability (or lack thereof) of the parties' Agreements.

For all these reasons, this court recommends that while NAGE's motion to strike defendants' counterclaims (Docket No. 40) should be allowed, the court nevertheless should accept the verified pleading as an affidavit in support of NEMSA's motion for a preliminary injunction and address the motion on the merits.

## B.   Need for an Evidentiary Hearing

NAGE has asserted that this court cannot issue a preliminary injunction without complying with the procedural requirements of § 107 of the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, which provides that no injunction may be issued in a case "involving or growing out of a labor dispute," except after an evidentiary hearing, specified findings

by the court and other steps including a bond to cover damages, including attorneys'

fees.[4]  However, as detailed above, the relevant facts in this matter are not in dispute.  In

fact, most of the facts are derived from NAGE's pleadings.  It is an open question as to

whether the provisions of 29 U.S.C. § 107 apply to injunctions to enforce arbitration

agreements such as requested here.  See Kansas City S. Transp. Co., Inc. v. Teamsters

Local Union #41, 126 F.3d 1059, 1067-68 & n.7 (8th Cir. 1997), and cases cited.

Assuming, arguendo, that § 107 applies, this court finds that "no evidentiary hearing was

necessary because the facts supporting [the requested] relief are not in dispute."  Otis

Elev. Co. v. Int'l Union of Elev. Constructors, Local 4, 408 F.3d 1, 6 n.5 (1st Cir. 2005)

(citing Kansas City S. Transp. Co., 126 F.3d at 1067-68).  Since the facts are not in

dispute and this court allowed extensive briefing and arguments on the merits of the

motion for a preliminary injunction, the motion for a preliminary injunction is ripe for

decision.

## C.    **Standard for Injunctive Relief**

The Norris-LaGuardia Act, 29 U.S.C. §§ 101-115 (1982), sets forth the "[f]ederal

labor law policy prohibiting injunctions in peaceful labor disputes over arbitral issues[.]"

Teachers Ass'n of Japanese Educ. Inst. of N.Y., Inc. v. Japanese Educ. Inst. of N.Y., 724

F. Supp. 188, 191 (S.D.N.Y. 1989).  Nevertheless, in Boys Markets, Inc. v. Retail Clerk's

---

[4]  Neither party addressed the issue of the need for a bond, if any.  Since this decision is being issued as a Report and Recommendation, this court recommends that any hearing addressing the need for and/or the amount of a bond, if any, be deferred until the District Judge rules on this Report and Recommendation.

Union, Local 770, 398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970), the Supreme

Court "allowed courts to consider the propriety of an injunction where necessary to

preserve the arbitral process." Teachers Ass'n, 724 F. Supp. at 191. "Courts have also

recognized 'reverse Boys Markets injunctions,' or injunctions against employers to

maintain the status quo in a labor dispute pending arbitration." Id. "The sole *raison*

*d'etre* for the exception is to 'enforce the obligation that the recalcitrant party freely

undertook under a specially enforceable agreement to submit disputes to arbitration.'"

Indep. Oil & Chem. Workers of Quincy, Inc. v. Proctor & Gamble Manuf. Co., 864 F.2d

927, 929 (1st Cir. 1988) (internal punctuation omitted) (quoting Boys Markets, 398 U.S.

at 252-53, 90 S. Ct. at 1593 (footnote omitted), and citing Buffalo Forge Co. v. United

Steelworkers, 428 U.S. 397, 408, 96 S. Ct. 3141, 3148, 49 L. Ed. 2d 1022 (1976)).

Consequently, "with respect to motions for injunctive relief to enforce an agreement to

arbitrate a labor dispute[,]" in addition to satisfying the traditional elements required for

injunctive relief, the moving party must also establish that "the integrity of the arbitration

process would be threatened absent interim relief." United Gov't Sec. Officers of Am.

Int'l Union v. Serv. Employees Int'l Union, 646 F. Supp. 2d 91, 94 (D.D.C. 2009)

(internal quotations omitted). Simply put, "[a]n injunction in aid of arbitration is

appropriate only when the actual or threatened harm to the aggrieved party amounts to a

frustration or vitiation of arbitration." Id. (internal quotation and punctuation omitted).

Applying these principles to the instant case compels the conclusion that an injunction

should issue.

### 1.      **Frustration of Arbitration**

It is undisputed that once an arbitrator is selected in the instant case, the arbitrator would have authority to consider granting preliminary relief.  However, the record is clear that the issue will not be presented to and resolved by an arbitrator prior to the upcoming elections.  It is also clear that once the elections take place, any relief NEMSA might be able to obtain from an arbitrator would not restore the parties to their pre-election positions.  Therefore, this is one of the rare cases where "arbitration, unassisted by a status quo injunction, would be no more than 'a hollow formality.'"  Indep. Oil & Chem. Workers, 864 F.2d at 931 (quoting Lever Bros. Co. v. Int'l Chem. Workers Union, Local 217, 554 F.2d 115, 123 (4th Cir. 1976)).

At a minimum, NEMSA will have to devote its resources to running against the much larger and better funded union, NAGE, despite NAGE's agreement that it would not compete with NEMSA.  The record indicates that NAGE even managed to get a head start on electioneering by soliciting employees and notifying them of its intention to compete, even while its Agreements with NEMSA were undisputably in effect.  Nothing that an arbitrator can order will eliminate this inappropriate advantage.  See Teachers Assoc., 724 F. Supp. at 193 (teachers' association entitled to preliminary injunction pending arbitration relating to change in format of faculty administration meetings since "[a]n arbitrator cannot adequately remedy the changed dynamics of a meeting already held.").  Even more importantly, however, in the event that NAGE prevails at an election, but is found to have breached its Agreements, the arbitrator would not have any available

remedies to provide NEMSA what it bargained for.  The parties do not suggest that the

arbitrator could replace NAGE with NEMSA in contradiction to election results.  Nor, if

a third-party union prevailed, could the arbitrator recreate an election where NAGE had

not drawn off votes which may have gone to NEMSA.  The abrupt cancellation of the

parties' Agreements, whereby NAGE has unilaterally invalidated its express commitment

in its Affiliation Agreement (Art. V) "to protect[ ] NEMSA's jurisdiction and its

bargaining relationship against challenges from other labor organizations" in order to

become NEMSA's prime competitor will cause NEMSA irreparable harm.  See Toyo Tire

Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 978 & n.2 (9th Cir.

2010) (District Court recognizes that abrupt dissolution of partnership agreement likely to

cause irreparable harm).[5]

        Moreover, the balancing of the equities clearly tips in NEMSA's favor.  As an

initial matter, the injunction is to last only until an arbitrator can address the issue

whether a preliminary injunction is warranted.  See id. at 980 (injunction to preserve

status quo until an arbitrator can consider and rule on a party's request for interim relief

is consistent with the strong federal policy in favor of arbitration and "may be necessary

to preserve the meaningfulness of the arbitral process").  In light of NAGE's admission in

---

        [5]  NEMSA also argues that it may go out of business if NAGE's raiding activities con-
tinue, and if other workers learn that NEMSA has been decertified.  (See Defs. Mem. at 12-13).
However, the factual record is not sufficiently developed for this court to consider these argu-
ments, which, as of now, are no more than conclusory statements.  Therefore, NEMSA's concern
that it may go out of business is not the basis for this court's recommendation that a preliminary
injunction issue.

this court that it is up to the arbitrator in the first instance to decide whether the arbitration agreements remain enforceable (Docket No. 19 at 3), NAGE should bear the consequences of the delay caused by its decision to file suit instead of filing for arbitration. Moreover, the broad arbitration clauses in the Agreements, and NAGE's express commitment that mediation and arbitration were the exclusive remedies available to the parties, make it equitable for the parties to maintain the status quo pending arbitration.

NAGE argues that it (and the employees) will be significantly harmed if an injunction issues because it will not have the opportunity to compete for the bargaining units in the four upcoming elections for several years. This argument is unpersuasive. By entering into its Agreements with NEMSA, NAGE had already agreed not to compete in these elections, and the employees would not have the opportunity to vote for NAGE. Obviously, then, not representing these units will not cause NAGE, with its 43,000 members, irreparable harm. To the extent that NAGE has been harmed by not being paid the amounts it expected under the Agreements in exchange for the anti-raiding agreement, if the arbitrator agrees, NEMSA will have to pay the amounts it owes. As discussed in connection with this court's ruling on NAGE's motion for trustee process attachment, the amount allegedly owed is less than three months of dues NEMSA is expected to receive from AMR, and is therefore not an insurmountable amount.

In the Affiliation Agreement, the parties acknowledged that "NEMSA's jurisdictional protection against other labor organization is an essential condition" of the Agree-

ment.  (Affiliation Agreement Art. V).  Unless the injunction issues, NAGE's actions

"will make it impossible for the arbitrator to award an adequate remedy."  Teachers

Ass'n, 724 F. Supp. at 192.  Therefore, NEMSA has satisfied this element of a Boys

Market injunction.

### 2.      Traditional Elements of a Preliminary Injunction

As discussed above, NEMSA must also satisfy the traditional elements for this

court to issue a preliminary injunction.  Thus, NEMSA must establish (1) a likelihood

of success on the merits; (2) the potential for irreparable harm absent injunctive relief;

(3) that the balance of the equities weigh in its favor; and (4) that injunctive relief will

serve the public interest.  See Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d

1, 9 (1st Cir. 2012).  "The circumstances under which the actions of the party to be

enjoined pose a substantial threat to the arbitration process are those which federal courts

have historically found to satisfy the irreparable harm prerequisite to the issuance of a

preliminary injunction."  Teamsters, Local 764 v. Branch Motor Express Co., 463 F.

Supp. 282, 287 (D. Pa. 1978).  As discussed above, NEMSA has satisfied this element.

Moreover, as discussed above, the balance of equities favor NEMSA.  Therefore, these

elements will not be discussed further.

As detailed below, NEMSA also has established a strong likelihood of success on

the merits of its claim that, at a minimum, the matter should have been referred to arbitra-

tion and that NAGE's unilateral termination was premature.  In light of the strong policy

favoring arbitration, this court further concludes that the issuance of an injunction would

serve the public interest.  Therefore, this court concludes that all the elements have been satisfied and that the preliminary injunction should issue.

### Likelihood of Success on the Merits

In the context of a labor dispute, the injunction must meet "all the usual criteria for injunctive relief, including irreparable injury, likelihood of success on the merits, balancing of the equities, and consideration of the public interest." Verizon N.E., Inc. v. Int'l Bhd. of Elec. Workers, Local 2322, 651 F.3d 176, 184 (1st Cir. 2011).  The "traditional inquiry into the likelihood of success on the merits would encroach upon the role of the arbitrator." Teachers Ass'n, 724 F. Supp. at 193.  Consequently, courts have held that the party moving for a preliminary injunction in the labor context "need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor." Local 1266, Int'l Ass'n of Machinists v. Panoramic Corp., 668 F.2d 276, 284-85 (7th Cir. 1981).  NEMSA can easily meet this standard in connection with its claim that NAGE breached their Agreements.

NAGE justifies its failure to seek arbitration of its dispute with NEMSA on its contention that since NEMSA engaged in a material breach of its payment obligations, NAGE was relieved of its obligation to arbitrate.  In this court's view, this argument borders on frivolous.  In County of Middlesex v. Gevyn Constr. Corp., 450 F.2d 53 (1st Cir. 1971), the First Circuit held in response to an argument that since a party's work stoppage constituted a material breach of contract, an arbitration clause should be treated as having been rescinded, that the argument neither "has merit [nor] warrants extended

-19-

discussion." Id. at 54.  The issue whether there was a material breach was for the

arbitrator to decide, and the claim that a breach of contract invalidated the arbitration

clause "must be rejected *a fortiori*."  Id. at 56.  The same result should be reached here.

Even if NEMSA committed a material breach of contract, NAGE was not relieved of its

obligation to arbitrate.

Similarly unpersuasive is NAGE's contention that it could unilaterally terminate

the Agreements on two days notice.  NAGE argues that the language of the Agreements

requiring mutual agreement to terminate will be deemed unenforceable as too indeter-

minate.  Assuming, arguendo, that this is true, case law is clear that the best case scenario

for NAGE is an interpretation that the Agreements were terminable at will by either party

upon "reasonable notice," and that the failure to give reasonable notice before termination

would constitute a breach of the Agreements.  See RGJ Assocs., Inc. v. Stainsafe, Inc.,

300 F. Supp. 2d 250, 252-53 (D. Mass. 2004), and cases cited.  See also Int'l Union of

Operating Eng'rs, Local 542 v. Allied Erecting & Dismantling Co., Inc., No. 12-6579,

2013 WL 1234729, at *2-3 (E.D. Pa. Mar. 26, 2013) ("Labor contracts that do not

contain a fixed duration clause are terminable upon reasonable notice.").  While

determining what is a reasonable amount of time is a question of fact, it is generally

defined as sufficient time to give the other party reasonable time to seek substitute

arrangements and minimize its losses.  See RGJ Assoc., 300 F. Supp. 2d at 254.  In the

instant case, NAGE sent a notice dated April 5, 2013 (Friday) terminating the

Agreements effective April 8, 2013 (Monday).  This court is more than hard pressed to

find that amount of time to be reasonable.  See Boeing Airplane Co. v. Aeronautical

Indus. Dist. Lodge 751, 91 F. Supp. 596, 603 (W.D. Wash. 1950) (giving company 24

hours to consider union's proposal containing far-reaching demands was unreasonable

and did not terminate the contract).  Therefore, NEMSA has met its obligation of

establishing that it is likely to prevail on the merits of its claims.

## Public Policy

Finally, the court finds that the issuance of a preliminary injunction pending

arbitration is consistent with public policy.  As the Supreme Court held in Boys Market,

> the unavailability of equitable relief in the arbitration context
> presents a serious impediment to the congressional policy favoring
> the voluntary establishment of a mechanism for the peaceful resolu-
> tion of labor disputes, that the core purpose of the Norris-LaGuardia
> Act is not sacrificed by the limited use of equitable remedies to
> further this important policy, and consequently that the Norris-
> LaGuardia Act does not bar the granting of injunctive relief in the
> circumstances of the instant case.

Boys Market, 398 U.S. at 253, 90 S. Ct. at 1593-94.  For the same reason, the issuance of

an injunction here, for the purpose of preserving the parties' agreement to arbitrate, and

limited to the time until the arbitrator can consider a request for preliminary relief, is

consistent with public policy.

NAGE has referred this court to the unpublished decision in AFSCME v. United

Domestic Workers of Am., No. 05-CV-1251-BTM, 2005 WL 2128979 (S.D. Cal. Aug. 9,

2005), for the proposition that the Norris-LaGuardia Act prohibits a federal court from

issuing an injunction to enforce no-raiding agreements between unions.  (NAGE Mem. at

12-14).  In that case, the court denied a request for a preliminary injunction in a dispute between unions which were parties to a Memorandum of Understanding ("MOU") that established exclusive organization jurisdictions.  The court refused to enjoin a union's organizing efforts in violation of the MOU on the grounds that it was prohibited by the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104.  The court found Boys Market inapplicable, contending that the plaintiffs were not seeking to specifically enforce a promise to arbitrate, but rather were seeking to enjoin the union's organizing efforts to maintain the status quo pending arbitration regarding the union's breach of contract.  Id. at *7.

With due respect, this court finds the analysis of this AFSCME case to be unpersuasive.  Boys Market expressly recognized the anti-injunction provisions of the Norris-LaGuardia Act, found in 29 U.S.C. § 104, but nevertheless concluded that a limited injunction to enforce an arbitration agreement was permissible.  Other courts addressing injunctions in the context of anti-raiding agreements have found Boys Market injunctions to be permissible.  See, e.g., United Gov't Sec. Officers of Am. Int'l Union v. Serv. Employees Int'l Union, 646 F. Supp. 2d at 94-95 (while no injunction pending arbitration in connection with anti-raiding agreement would issue since soonest election was not for several years, court recognized the availability of injunctive relief under Boys Market and its progeny).  In the instant case, the issuance of an injunction is consistent with public policy, and NEMSA has satisfied all the elements of a Boys Market injunction.

-22-

**D.**     **Colcord**

The defendant Colcord has moved for a preliminary injunction on the grounds that the unilateral termination of his Employment Agreement caused him irreparable harm because he has lost the opportunity to earn $50 for each dues-paying person to join NEMSA.  This court recommends that Colcord's motion be denied.  As an initial matter, the Employment Agreement does not contain an arbitration clause, and it is an open question whether Colcord's Agreement is sufficiently related to NEMSA's Agreements so that the arbitration clauses in those Agreements should be deemed to cover Colcord's dispute as well.  That issue does not need to be resolved at this time.  The law is clear that where the movant is only entitled to monetary damages, he has an adequate remedy at law and has not established irreparable harm.  See Bear, Stearns & Co. v. Sharon, 550 F. Supp. 2d 174, 178 (D. Mass. 2008) (irreparable harm is "harm that cannot be recompensed by money damages).  Therefore, Colcord cannot meet the traditional elements necessary to establish a right to preliminary injunctive relief.

# IV.  CONCLUSION[6]

For the reasons detailed herein, this court recommends to the District Judge to whom this matter is assigned that NAGE's motion to strike counterclaims (Docket No. 40) be ALLOWED as they are not filed as part of an answer, but that the court treat the verified counterclaim as an affidavit in support of the defendants' request for a preliminary injunction.  This court further recommends that Colcord's motion for a preliminary injunction (Docket No. 27) be DENIED as he has not suffered irreparable harm by the termination of his employment agreement.  Finally, this court recommends that NEMSA's motion for a preliminary injunction (Docket No. 27) be ALLOWED, and that the court enter the following order:

> Pending the outcome of any requests for preliminary relief submitted in arbitration proceedings between the National Association of Government Employees, Inc. ("NAGE") and the National Emergency Medical Services Association, Inc. ("NEMSA"), it is hereby ORDERED that (1) NAGE shall be restrained and enjoined from participating in any election(s) in which it would be seeking to

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

replace NEMSA or otherwise challenge NEMSA's status as the representative for any existing employees or bargaining units; (2) NAGE shall withdraw all pending petitions to decertify NEMSA as the representative of any existing bargaining units; and (3) NAGE shall be restrained and enjoined from pursuing further efforts to decertify NEMSA as the representative of any existing bargaining units.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge